**LAW OFFICES OF MALLON & TRANGER**
86 Court Street
Freehold, NJ 07728
Telephone: (732) 780-0230
Facsimile: (732) 780-5002
Attorneys for Plaintiff, John P. Saddy

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

-----------------------------------------

| | |
|---|---|
| **JOHN P. SADDY** | : Civil No.: _____ |
| | : |
| Plaintiff, | : Civil Action |
| | : |
| v. | : |
| | : |
| **BOROUGH OF SEASIDE HEIGHTS;** | : |
| **CHRISTOPHER VAZ,** Seaside Heights Borough | : |
| Administrator; **ANTHONY E. VAZ,** | : |
| Seaside Heights Mayor; **RICHARD TOMPKINS;** | : **COMPLAINT AND** |
| **MICHAEL CARBONE; LOUIS DiGULIO;** | : **JURY DEMAND** |
| **AGNES POLHEMUS; HARRY SMITH;** | : |
| **VICTORIA GRAICHEN,** Seaside Heights | : |
| Council members; **KENNETH ROBERTS,** | : |
| Zoning Officer; | : |
| **CHARLES LASKEY,** Building Inspector; | : |
| **THOMAS BOYD,** Chief of Police; | : |
| **SERGEANT LUIGI VIOLANTE,** a Seaside | : |
| Heights police officer; **JOHN DOES 1-10,** | : |
| Seaside Heights police officers; and | : |
| **JOHN DOES 11-20,** Seaside Heights | : |
| Council Members; Municipal Employees; | : |
| Officials; and/or Appointees, | : |
| | : |
| Defendants. | : |

-----------------------------------------

Plaintiff, John P. Saddy, by way of Complaint against the

Defendants, says:

1

**JURISDICTION**

1.  This action is brought pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985(3), 42 U.S.C. §1986, and in accordance with the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred under 28 U.S.C. §§ 1331 and 1343(3).

**PARTIES**

2.  Plaintiff, John P. Saddy, is a resident of the Township of Toms River in the State of New Jersey.  At all times relevant to the allegations of this Complaint, Plaintiff was the owner of Club Karma, The Bamboo Bar, and several commercial parking lots in Seaside Heights, New Jersey.

3.  At all times relevant to the allegations of this Complaint, Defendants, Luigi Violante and/or John Does 1-10, were Seaside Heights police officers who acted under color of state law.  They are sued in their official and individual capacities.

4.  At all times relevant to the allegations of this Complaint, Defendant, Anthony E. Vaz, served as Mayor of the Borough of Seaside Heights and was a policymaker who acted under color of state law.  He is sued in his official and individual capacities.

5.  At all times relevant to the allegations of this Complaint, Defendant, Thomas Boyd, served as Chief of Police for the

Borough of Seaside Heights and was a policymaker who acted under color of state law.  He is sued in his official and individual capacities.

6.   At all times relevant to the allegations of this Complaint, Defendant, Christopher Vaz, served as Borough Administrator for Seaside Heights and was a policymaker who acted under color of state law.  He is sued in his official and individual capacities.

7.   At all times relevant to the allegations of this Complaint, Defendants, Richard Tompkins; Louis DiGulio; Agnes Polhemus; Harry Smith; Victoria Graichen; Council President Mike Carbone; and/or John Does 11-20 served as Seaside Heights Borough Council Members and were policymakers acting under color of state law.  They are sued in their official and individual capacities.

8.   At all times relevant to the allegations of this Complaint, Defendant, Kenneth Roberts, served as the Zoning Officer for the Borough of Seaside Heights and was a municipal employee, official and/or appointee acting under color of state law. He is sued in his official and individual capacities.

9.   At all times relevant to the allegations of this Complaint, Defendant, Charles Lasky served as the Building Inspector for the Borough of Seaside Heights and was a municipal employee, official and/or appointee acting under color of

state law.  He is sued in his official and individual capacities.

10. Defendant, Borough of Seaside Heights, is a duly designated municipality organized within and under the laws of the State of New Jersey.  At all times relevant to the allegations of this Complaint, Defendant, Borough of Seaside Heights, was the employer and/or responsible for the supervision and conduct of Defendants, Anthony E. Vaz; Christopher Vaz; Richard Tompkins; Louis DiGulio; Agnes Polhemus; Harry Smith; Victoria Graichen; Michael Carbone; Kenneth Roberts; Charles Lasky; Thomas Boyd; Luigi Violante; John Does 1-10; and/or John Does 11-20.

**FACTUAL ALLEGATIONS**

**A.   INTRODUCTION**

11. Defendant, Borough of Seaside Heights, through its elected governing body; employees; officials; and/or appointees, and its Police Department, has a history of abusing power and taking retaliatory actions against residents and/or citizens for exercising their constitutional rights.

12. Through its Council Members; Municipal Employees; Officials; Appointees; and its Police Officers, including the individually named Defendants, Defendant, Borough of Seaside Heights, has implemented and maintains an unconstitutional, discriminatory and racist policy, practice and/or custom of

discouraging and limiting African-American and LGBTQ visitors to Seaside Heights.

13. Plaintiff's business, Club Karma, was shut down by Defendants in May 2018 in retaliation for his refusal to abide by the Borough of Seaside Heights' unconstitutional, discriminatory and racist policy, practice and/or custom.

14. Further, the retaliation was intended to punish Plaintiff based on the fallacy that Plaintiff - not Seaside Heights police officers - was responsible for numerous excessive force lawsuits filed against the Borough and the resulting settlement pay-outs and increase in liability insurance premiums, all because some of the incidents occurred outside of Plaintiff's businesses.

15. Plaintiff has operated bars and nightclubs in Seaside Heights for over 25 years.  He established Club Karma in or around 1998.

16. In or around the year 2000, Plaintiff opened Club Karma after extensive discussions with representatives of Defendant, Borough of Seaside Heights.

17. Pursuant to Plaintiff's agreement with the Borough, he added a restaurant, Luna Rosa, to the Club Karma property.

18. Over the years, Plaintiff operated his property as both a nightclub (Club Karma) and a restaurant (Luna Rosa - later, Savor Lounge and Chillz) in accordance with his agreement

with the Borough.

19. Club Karma never served underage patrons; did not condone or encourage drug use; and refused entry and service to intoxicated people.

20. Plaintiff never had any trouble with the Borough of Seaside Heights over the years and continued operating his business until Defendants orchestrated the closing of Club Karma during Memorial Day Weekend 2018 after Plaintiff objected to Seaside Heights' policy, practice and/or custom of discouraging and limiting the number of African American and LGBTQ patrons at Club Karma.

**B.    DEFENDANTS' HISTORY AND PATTERN OF POWER ABUSE BY POLICE AND BOROUGH OFFICIALS**

21. Beginning in the 1990s, Plaintiff witnessed, and became the target of, Defendants' abuse of power.  This pattern of abuse of power and police misconduct has continued unabated since that time.

22. In the early 1990s, Plaintiff ejected from the Bamboo Bar an intoxicated Seaside Heights police dispatcher who was groping women.  Within five minutes, Plaintiff received a phone call from a Seaside Heights police lieutenant, who told Plaintiff, in no uncertain terms, that not only was Plaintiff going to let the dispatcher return, but he was going to apologize and allow him and his friends to drink for free.  Plaintiff refused.

6

23. Within thirty minutes of Plaintiff's refusal, approximately fifteen officers, accompanied by a Seaside Heights sergeant, entered the premises, demanded identification and harassed many of Plaintiff's customers.

24. Over the next three days, Plaintiff was subjected to numerous and baseless motor vehicle traffic stops while arriving and leaving Seaside Heights.

25. Plaintiff met with the aforementioned police lieutenant and the Mayor of Seaside Heights regarding this harassment and retaliation.  In return for an end to the police harassment, Plaintiff was forced to agree to "sponsor" police softball teams - comprised of off-duty police officers.  With this "sponsorship," these off-duty police officers were allowed to eat and drink for free at Plaintiff's establishments after softball games.  Plaintiff was also required to purchase the team's uniforms.  This continued until the late 1990s.

26. Despite Plaintiff's "sponsorship," Seaside Heights police officers regularly conducted unjustified searches of patrons waiting to enter Plaintiff's nightclubs.

27. In 1992, Plaintiff was directed to support incumbent political candidates under threat from the Borough Council that it would institute a selective 12:00 a.m. closing time for the Bamboo Bar - a death sentence for any nightclub.

28. Approximately six months later, a new election was held
    after it was discovered that deceased and fictitious persons
    had voted for the incumbent slate.  As a result, one
    incumbent politician was indicted and admitted into the
    Pretrial Intervention Program.

29. In the early 2000s, Defendant, Borough of Seaside Heights,
    passed an ordinance that required Plaintiff to maintain a
    police presence outside his nightclubs, which was comprised
    of off-duty Seaside Heights police officers.  Plaintiff was
    forced to reimburse the Borough for use of these off-duty
    police officers at a rate of pay significantly higher than
    that which Seaside Heights ordinarily paid its police
    officers.

30. As a result of Plaintiff complying with this ordinance, he
    became embroiled as a named Defendant in lawsuits along with
    Seaside Heights and its police officers, who were sued
    several times for using excessive force.

31. Plaintiff became involved in these lawsuits because Seaside
    Heights police officers would beat and arrest people being
    escorted from Plaintiff's nightclubs by Plaintiff's security
    staff.

32. In fact, the vast majority of these excessive force lawsuits
    filed against the Borough of Seaside Heights and its police
    officers did not occur on Plaintiff's properties, but rather

outside other establishments or other locations such as the boardwalk.

33. Ultimately, Defendant, Borough of Seaside Heights, eliminated the ordinance requiring its officers provide a police presence outside Plaintiff's nightclubs.  The Borough took this action to reduce the number of lawsuits filed against its officers.

34. Despite the fact that: (1) Plaintiff had complied with the ordinance and paid the Borough for the police presence; and (2) the majority of the lawsuits filed against the Borough and its police officers occurred nowhere near Plaintiff's establishments, Seaside Heights blamed Plaintiff for the lawsuits against its police officers.  Defendant, Borough Administrator Christopher Vaz, told Plaintiff that his nightclubs were responsible for the majority of the lawsuits and that the lawsuits caused Seaside Heights to pay higher liability insurance premiums.

35. Defendant, Borough Administrator Christopher Vaz, also told Plaintiff that his nightclubs were responsible for destroying the family-town image of Seaside Heights.

**C.   DEFENDANTS' RACIST AND DISCRIMINATORY POLICIES, PRACTICES AND/OR CUSTOMS**

36. Defendant, Borough of Seaside Heights, has pressured Plaintiff to limit and discourage the number of African-Americans coming to his nightclubs.

37.  Former Mayor William Akers complained to Plaintiff in private discussions that there were too many African-American tourists on the boardwalk and nightclub patrons in Seaside Heights.

38.  Representatives of Defendant, Borough of Seaside Heights, made clear to Plaintiff over his objection that he was to limit the number of his African-American patrons by refraining from playing Hip-Hop and Rap music, which was thought to attract African-Americans to nightclubs. Defendants also forbade Plaintiff from holding events geared toward the LGBTQ community.

39.  Defendant, Chief of Police Thomas Boyd, has made it known that Plaintiff's clubs have "too many  'n*****s'" and warned him not to cater to African-Americans by playing Hip-Hop and Rap music.  Boyd made it clear that he was speaking on behalf of the Borough of Seaside Heights, specifically stating "The Council's yelling at me, so I'm yelling at you."

40.  Hip-Hop and Rap music are popular among all of Plaintiff's patrons, not only African-Americans.  Plaintiff advised Boyd numerous times that club patrons have told him that they wanted to hear these types of music, to which Boyd responded, "I don't want Hip-Hop. I don't care what [music] chart it's on."  Boyd also ordered Plaintiff to institute a

dress code in his clubs and a policy requiring customers provide two forms of identification for entry, a policy designed to limit and discourage African-American patrons. Boyd also required Plaintiff to post signs reading "no do rags" and "dress code" at his businesses.

41. Defendant, Borough of Seaside Heights, also forbade certain types of events.  By way of example, Plaintiff was forbidden to hold an event sponsored by Hennessy-Cognac because Boyd claimed that a Hennessy event would attract too many African-Americans to Seaside Heights.

42. In fact, Plaintiff was told that if he moved forward with the Hennessy-Cognac event, the Seaside Heights Police Department would conduct a raid.

43. To ensure that Plaintiff was limiting and discouraging African-American patrons, high-ranking Borough officials, including but not limited to Defendant, Chief of Police Thomas Boyd, were sent to Plaintiff's nightclubs specifically to count the number of African-Americans and report back to the Mayor and Council.

44. Defendants' racist and discriminatory policy, practice and/or custom also included limiting and discouraging LGBTQ individuals from entering Plaintiff's nightclubs and Seaside Heights.  Defendants were engaging in a very subtle form of discrimination - outwardly, there was no apparent

discrimination taking place while in fact Plaintiff was experiencing constant pressure from Borough Officials to reduce the number of African-American and LGBTQ patrons that would be attracted to his nightclubs.

45. Following Hurricane Sandy, Plaintiff attended a Seaside Heights Borough Council meeting.

46. Plaintiff spoke with Defendant, Borough Administrator Christopher Vaz, following this meeting to discuss the idea of having Hip-Hop/Rap and LGBTQ-themed events to increase business and revenue, which had been crippled by Hurricane Sandy.

47. Defendant Vaz replied that if Plaintiff held any such events, Club Karma and the Bamboo Bar's closing time would be changed to 12:00 a.m. and "the police would be living" at Plaintiff's establishments.

**D.    DEFENDANTS' RETALIATION**

48. In April 2018, Plaintiff and an African-American Promoter/DJ/Rapper met with Borough Administrator Christopher Vaz to revisit the issue of having Hip-Hop/Rap and LGBTQ-themed events at Club Karma and The Bamboo.

49. Promoters had previously been unsuccessful in introducing Hip-Hop and Rap entertainment events in Seaside Heights because of the Borough's policy, practice and/or custom of limiting and discouraging African-American tourists and

nightclub patrons.

50. Plaintiff told Defendant, Borough Administrator Christopher Vaz, that it was wrong for Seaside Heights to dictate the types of music he could play in his nightclubs; that he would no longer comply with its prohibition on playing Hip-Hop and Rap music; that he intended to schedule Hip-Hop and Rap music events at Club Karma; and that he objected to the Borough's attempts to control the racial/ethnic makeup of his nightclub patrons.

51. At that same meeting, Plaintiff suggested the need to increase tourism in Seaside Heights and offered to bring in promoters from Asbury Park to host events for the LGBTQ community, in addition to Hip-Hop and Rap music events.

52. Defendant, Borough Administrator Christopher Vaz, was angry that Plaintiff had brought the African-American Promoter to the meeting.  At one point, Vaz spoke privately with Plaintiff and stated, "Don't ever set me up again." Plaintiff understood this to mean that Vaz did not want to interact with African-Americans and did not want Plaintiff playing music at his nightclubs that would supposedly attract African-Americans.

53. Vaz also told Plaintiff that "Blacks and Fags" did not conjure images of a family-oriented town.

54. Several weeks later, in early May 2018, Defendant, Zoning

Officer Kenneth Roberts, told Plaintiff, without elaboration, that the Borough was "upset" with him.

55. For the following two weeks, Plaintiff made a number of calls to Defendants, Mayor Anthony Vaz and Borough Administrator Christopher Vaz, and left messages to find out why the Borough was "upset" with him.  Plaintiff never received a response from them.

56. Unbeknownst to Plaintiff, the Borough of Seaside Heights filed a Verified Complaint and Order to Show Cause seeking a permanent injunction closing Club Karma on May 22, 2018, which was denied by the Court.

57. Club Karma and Chillz opened for the summer season Memorial Day weekend, Friday May 25, 2018.

58. During the week prior to the opening, Defendant, Zoning Officer Kenneth Roberts, inspected Club Karma and Chillz multiple times.  No code violations were found.

59. However, on May 25, 2018, Kenneth Roberts returned with Defendant, Building Inspector Charles Lasky.  With Roberts' encouragement, Lasky issued summonses for "change of use" and "erecting a temporary stage."  Lasky told Plaintiff that Borough Administrator Christopher Vaz had ordered him to issue the summonses.

60. Following Lasky's termination, Kenneth Roberts contacted Plaintiff, at which time he advised Plaintiff to "rip up"

14

the summonses.  According to Roberts, the Borough was
dismissing the charges because no such charges existed among
Borough ordinances.

61.  On May 26, 2018 at approximately 9:00 p.m., nine State Fire
Inspectors arrived at Club Karma and Chillz.  Plaintiff was
told that the Borough requested that the State inspect his
property.

62.  No violations were found following a ninety minute
inspection.

63.  The following night, Sunday, May 27, 2018, Club Karma and
Chillz were surrounded by Seaside Heights police officers;
Ocean County Sheriff's officers; K-9 units; Borough
officials; EMS crews; and the Fire Department.

64.  Plaintiff asked Chief Boyd what was occurring.  In response,
he stated: "I'm just doing my job, John."

65.  Club Karma was hosting an electronic music event called
"Hyperglow," which in prior years had been run by the
Borough on the beach.  That night, Chillz was strictly open
to individuals 21 years of age and older.  Anyone less than
21 years of age was confined to Club Karma.  The two
establishments were partitioned by large sliding glass doors
measuring approximately thirty feet wide.  No alcohol was
served in the under-21 section of Club Karma.

66.  Over Plaintiff's objection, plain clothes police officers,

including Defendants, Sergeant Luigi Violante and John Does 1-10, entered and opened the glass doors separating Chillz and Club Karma.  This intentional act on the part of law enforcement allowed minors to enter Chillz.

67. By removing the barrier separating Chillz and Club Karma, adult and minor patrons intermixed, thus providing a justification for police officers to claim they were arresting minors for underage drinking.

68. Defendants, Sergeant Luigi Violante and John Does 1-10, searched Plaintiff's patrons and premises without a warrant or probable cause.

69. Defendants contend that there were a number of EMS calls for intoxicated, overdosed and injured Club Karma patrons.

70. Plaintiff was present that evening and did not witness any overdoses on his property or injury to any person.  None were reported to him by any member of his staff.

71. Defendant, Borough of Seaside Heights, ordered Club Karma closed and it remains closed to this day.  Chillz continued to operate for the season.

72. The police raid was staged to create a justification for closing Club Karma because of Plaintiff's refusal to follow Defendants' policy, custom and/or practice of limiting and discouraging African-American and LGBTQ visitors to his nightclubs and Seaside Heights.

73.  As further retaliation for Plaintiff's refusal to abide by the Borough's racist and homophobic policy, practice and/or custom, Defendant, Borough Administrator Christopher Vaz, went on TV 12 News shortly after Club Karma's closing to falsely announce that there were overdoses at the club and that somebody was thrown off a balcony to the sidewalk. Defendant Vaz also told parents to keep their children away from Club Karma.

74.  On June 20, 2018, Defendant, Borough of Seaside Heights, filed a complaint with the New Jersey Department of Law and Public Safety seeking to revoke Club Karma's mercantile license and suspend Plaintiff's liquor license for a year.

75.  The retaliation continues.  Routinely, Club Karma has operated "18 to party, 21 to drink" events, meaning that eighteen, nineteen and twenty year olds were permitted in Club Karma to dance and socialize.  Plaintiff also operated "Teen Night," where teenagers between fourteen and seventeen years of age were permitted on the premises to dance and socialize.

76.  In July 2018, Defendant, Borough of Seaside Heights, adopted an ordinance banning the "18 to party, 21 to drink" and "Teen Night" events.  Plaintiff had successfully run these types of events for over twenty-five years at The Bamboo Bar and Club Karma without any problems or complaints from the

17

Borough.

77. Defendant, Mayor Anthony Vaz, stated in a June 11, 2018, Asbury Park Press article that the ordinance banning the events was directed solely toward Plaintiff's establishments. Following adoption of the ordinance, other licensed establishments were permitted by Defendant, Borough of Seaside Heights, to continue operating "18 to party, 21 to drink" and "Teen Night" events in bars on the boardwalk without any repercussions.

78. Contrary to the Borough of Seaside Heights' public claims that it is trying to promote a "Family Environment," the Borough, through the individually named defendants, is actually trying to promote a "White" and "Straight" Environment, as evidenced by its maintenance and implementation of a policy, practice and/or custom of limiting and discouraging the number of African-American and LGBTQ nightclub patrons and visitors to Seaside Heights.

79. After years of acquiescing to Defendants' racist and homophobic policy, practice and/or custom, Plaintiff announced his intention to play music and hold events which would attract African-American and LGBTQ nightclub patrons and visitors to Seaside Heights. However, Defendants' actions caused Plaintiff to lose the entire 2018 Club Karma Summer season revenue. Plaintiff continues to lose revenue

18

based on these actions.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. §1983
### MONELL LIABILITY
### BOROUGH OF SEASIDE HEIGHTS

80. Plaintiff repeats the allegations of the previous paragraphs as if set forth at length herein.

81. Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials and/or Appointees; and Chief of Police Thomas Boyd, are responsible for making policy for the Borough of Seaside Heights.

82. The policy making authority of Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials and/or Appointees; and Chief of Police Thomas Boyd, is final and unreviewable.

83. Defendants' actions, as outlined above, constitute a policy

or custom that violates the prohibition of discrimination based on race and sexual orientation under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

84. As a direct and proximate cause, Plaintiff has been deprived of his constitutional rights under the First, Fourth, and Fifth Amendments to the United States Constitution; has sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

**COUNT II**
**42 U.S.C. §1983**
**SUPERVISORY LIABILITY**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN; JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials and/or Appointees; and CHIEF OF POLICE THOMAS BOYD**

85. Plaintiff repeats the allegations of the previous paragraphs as if set forth at length herein.

86. Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials and/or Appointees; and Chief of Police Thomas Boyd, are responsible for making policy for the Borough of Seaside

Heights.

87. Defendants, Borough Administrator Christopher Vaz; Mayor
Anthony E. Vaz; Council Member Richard Tompkins; Council
Member Michael Carbone; Council Member Louis DiGulio;
Council Member Agnes Polhemus; Council Member Harry Smith;
Council Member Victoria Graichen; John Does 11-20, Seaside
Heights Council Members; Municipal Employees; Officials
and/or Appointees; and Chief of Police Thomas Boyd,
established and maintained a policy, practice or custom of
discrimination based on race and sexual orientation.

88. Alternatively, Defendants, Borough Administrator Christopher
Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins;
Council Member Michael Carbone; Council Member Louis
DiGulio; Council Member Agnes Polhemus; Council Member Harry
Smith; Council Member Victoria Graichen; John Does 11-20,
Seaside Heights Council Members; Municipal Employees;
Officials and/or Appointees, and Chief of Police Thomas Boyd
either participated in violating Plaintiff's rights,
directed others, such as Defendants, Zoning Officer Kenneth
Roberts; Building Inspector Charles Laskey; Sergeant Luigi
Violante; and/or John Does 1-10, Seaside Heights police
officers, to violate them, or as persons in charge, had
knowledge of or acquiesced in these subordinates'
violations.

21

89. This policy, practice or custom of discrimination based on race and sexual orientation directly caused constitutional harm to Plaintiff under the First, Fourth, and Fifth Amendments to the United States Constitution.

90. As a direct and proximate cause, Plaintiff has been deprived of his constitutional rights; has sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

**COUNT III**
**42 U.S.C. §1983**
**FIRST AMENDMENT - RETALIATION**
**BOROUGH OF SEASIDE HEIGHTS;**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN;**
**ZONING OFFICER KENNETH ROBERTS;**
**BUILDING INSPECTOR CHARLES LASKEY;**
**CHIEF OF POLICE THOMAS BOYD; SERGEANT LUIGI VIOLANTE;**
**JOHN DOES 1-10, Seaside Heights Police Officers;**
**AND/OR JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials; and/or Appointees**

91. Plaintiff repeats the allegations of the previous paragraphs as if set forth at length herein.

92. By vocally objecting to Seaside Heights' prohibition on his playing Hip-Hop and Rap music in his nightclubs and its attempt to reduce the number of African-Americans and LGBTQ individuals that would be attracted to his nightclubs and Seaside Heights, Plaintiff engaged in constitutionally

protected conduct.

93. As a result of Plaintiff engaging in this constitutionally protected conduct, Defendants abused their authority by harassing and retaliating against Plaintiff.  This adverse action included: (1) issuing baseless code enforcement and building summonses to Club Karma so as to interfere with the operation of Plaintiff's establishment; (2) executing an unjustified police raid which resulted in the closing of Club Karma; (3) filing a Complaint and Order to Show Cause to prevent Club Karma from operating; (4) filing a Complaint seeking to suspend and/or revoke Club Karma's mercantile and liquor licenses; and (5) passing an Ordinance banning "18 to Party, 21 to Drink" and "Teen Night" events directed solely at Plaintiff's establishments while permitting other establishments to continue operating such events without such interference.

94. The exercise of Plaintiff's constitutional right was a substantial and motivating factor in the adverse action taken by Defendants against Plaintiff.

95. As a direct and proximate cause, Plaintiff has been deprived of his constitutional rights; has sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

**COUNT IV**
**42 U.S.C. §1983**
**FOURTH AMENDMENT – ILLEGAL SEARCH**
**SERGEANT LUIGI VIOLANTE AND JOHN DIES 1-10,**
**Seaside Heights Police Officers**

96. Plaintiff repeats the allegations of the previous paragraphs as if set forth at length herein.

97. The Fourth Amendment prohibits law enforcement from engaging in unreasonable searches and seizures.

98. The raid and search of Club Karma by Defendants, Luigi Violante and John Does 1-10, Seaside Heights police officers, as outlined above, was unjustified, without probable cause, reasonable suspicion or any other exception to the Fourth Amendment's warrant requirement.

99. As a direct and proximate cause, Plaintiff has been deprived of his constitutional rights; has sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

**COUNT V**
**42 U.S.C. §1983**
**FIFTH AMENDMENT – REGULATORY TAKING**
**BOROUGH OF SEASIDE HEIGHTS;**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN; CHIEF OF POLICE THOMAS BOYD**
**AND/OR JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials and/or Appointees**

100. Plaintiff repeats the allegations of the previous paragraphs

24

as if set forth at length herein.

101. By vocally objecting to Seaside Heights' prohibition on his playing Hip-Hop and Rap music in his nightclubs and its attempt to reduce the number of African-Americans and LGBTQ individuals that would be attracted to his nightclubs and Seaside Heights, Plaintiff engaged in constitutionally protected conduct.

102. As a result of Plaintiff engaging in this constitutionally protected conduct, Defendants abused their authority, harassed and retaliated against Plaintiff by, *inter alia*, executing an unjustified police raid which resulted in the closing of Club Karma.

103. The closing of Club Karma by Defendants, as outlined above, has denied Plaintiff all economically beneficial or productive use of his establishment, and constitutes a Regulatory Taking in violation of the Fifth Amendment.

104. As a direct and proximate cause, Plaintiff has been deprived of his constitutional rights; has sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

**COUNT VI**
**42 U.S.C. §1983**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN;**
**ZONING OFFICER KENNETH ROBERTS**
**BUILDING INSPECTOR CHARLES LASKEY;**
**CHIEF OF POLICE THOMAS BOYD; SERGEANT LUIGI VIOLANTE;**
**JOHN DOES 1-10, Seaside Heights Police Officers;**
**AND/OR JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials; and/or Appointees**

105. Plaintiff repeats the allegations of the previous paragraphs as if set forth at length herein.

106. Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; Zoning Officer Kenneth Roberts; Building Inspector Charles Laskey; Chief of Police Thomas Boyd; Sergeant Luigi Violante; John Does 1-10, Seaside Heights police officers; and/or John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials; and/or Appointees, acting in concert, agreed and/or conspired to retaliate against Plaintiff for vocally objecting to the Borough's prohibition on his playing Hip-Hop and Rap music in his nightclubs and its attempt to reduce the number of African-Americans and LGBTQ individuals

26

that would be attracted to his nightclubs and Seaside Heights - conduct that is constitutionally protected.  This was a very subtle form of discrimination, but discrimination nonetheless.

107. In furtherance of this conspiracy, Defendants attempted to cover up and/or justify their violation of Plaintiff's First Amendment right by (1) issuing baseless code enforcement and building summonses to Club Karma so as to interfere with the operation of Plaintiff's establishment; (2) executing an unjustified police raid which resulted in the closing of Club Karma; (3) filing a Complaint and Order to Show Cause to prevent Club Karma from operating; (4) filing a Complaint seeking to suspend and/or revoke Club Karma's mercantile and liquor licenses; and (5) passing an Ordinance banning "18 to Party, 21 to Drink" and "Teen Night" events directed solely at Plaintiff's establishments while permitting other establishments to continue operating such events without such interference.

108. Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; Zoning Officer Kenneth Roberts; Building Inspector Charles Laskey; Chief of Police

Thomas Boyd; Sergeant Luigi Violante; John Does 1-10,
Seaside Heights police officers; and/or John Does 11-20,
Seaside Heights Council Members; Municipal Employees;
Officials; and/or Appointees, acting in concert, agreed
and/or conspired to engage in an unconstitutional Regulatory
Taking of Plaintiff's property - Club Karma.

109. In furtherance of this conspiracy, Defendants attempted to
cover up and/or justify their violation of Plaintiff's Fifth
Amendment right by falsely claiming that there were a number
of intoxicated, overdosed and injured Club Karma patrons on
the night of May 27, 2018.

110. As a direct and proximate cause, Plaintiff has been deprived
of his constitutional rights; has sustained lost income,
emotional distress and pain and suffering; and will continue
to incur same for some time to come.

**COUNT VII**
**42 U.S.C. §1985(3)**
**CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN;**
**ZONING OFFICER KENNETH ROBERTS;**
**BUILDING INSPECTOR CHARLES LASKEY;**
**CHIEF OF POLICE THOMAS BOYD; SERGEANT LUIGI VIOLANTE;**
**JOHN DOES 1-10, Seaside Heights Police Officers;**
**AND/OR JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials; and/or Appointees**

111. Plaintiff repeats the allegations of the previous paragraphs

as if set forth at length herein.

112. The actions of Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; Zoning Officer Kenneth Roberts; Building Inspector Charles Laskey; Chief of Police Thomas Boyd; Sergeant Luigi Violante; John Does 1-10, Seaside Heights police officers; and/or John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials; and/or Appointees, demonstrate a conspiracy to deprive African-Americans and LGBTQ individuals of either equal protection of the laws or of equal privileges and immunities under the law.

113. In furtherance of this conspiracy, Defendants established a subtle policy or custom of discrimination by attempting to reduce the number of African-Americans and LGBTQ individuals that would be attracted to Plaintiff's nightclubs and the Borough of Seaside Heights - in violation of the prohibition of discrimination based on race and sexual orientation under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

114. As a result of this policy or custom, and Plaintiff's vocal objection to same, Plaintiff was injured in his person or

property or deprived of his right or privilege as a citizen of the United States, which included: (1) issuing baseless code enforcement and building summonses to Club Karma so as to interfere with the operation of Plaintiff's establishment; (2) executing an unjustified police raid which resulted in the closing of Club Karma; (3) filing a Complaint and Order to Show Cause to prevent Club Karma from operating; (4) filing a Complaint seeking to suspend and/or revoke Club Karma's mercantile and liquor licenses; and (5) passing an Ordinance banning "18 to Party, 21 to Drink" and "Teen Night" events directed solely at Plaintiff's establishments while permitting other establishments to continue operating such events without such interference.

115. As a direct and proximate cause, Plaintiff has been deprived of his constitutional rights; has sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

**COUNT VIII**
**42 U.S.C. §1986**
**ACTION FOR NEGLECT TO PREVENT**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN;**
**ZONING OFFICER KENNETH ROBERTS;**
**BUILDING INSPECTOR CHARLES LASKEY;**
**CHIEF OF POLICE THOMAS BOYD; SERGEANT LUIGI VIOLANTE;**
**JOHN DOES 1-10, Seaside Heights Police Officers;**
**AND/OR JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials; and/or Appointees**

116. Plaintiff repeats the allegations of the previous paragraphs as if set forth at length herein.

117. Defendants, having conspired to interfere with Plaintiff's civil rights under 42 U.S.C. §1985(3), and with knowledge that violations against the prohibition of discrimination based on race and sexual orientation were occurring, had the power to prevent or aid in preventing the commission of such action.

118. By neglecting or refusing to prevent discrimination based on race and sexual orientation, as described above, Plaintiff has been deprived of his civil rights; has sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

## COUNT IX
## NEW JERSEY STATE CONSTITUTION AND
## NEW JERSEY CIVIL RIGHTS ACT ("NJCRA")

119. Plaintiff repeats the allegations of the previous paragraphs as if set forth at length herein.

120. This Court has supplemental jurisdiction to hear and adjudicate state law claims.

121. Defendants' actions, as outlined above, have violated Plaintiff's civil rights under the New Jersey State Constitution and New Jersey Civil Rights Act, <u>N.J.S.A.</u> 10:6-1 *et seq.*

122. As a direct and proximate cause, Plaintiff has been deprived of his constitutional rights; has sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

### <u>RELIEF</u>

**WHEREFORE,** Plaintiff seeks relief and judgment against the Defendants, including but not limited to:

1. An award of compensatory damages and punitive damages based on the intentional and malicious acts of the Defendants, which are allowed by the statutes pleaded herein or as permitted by common law and rules;

2. An award of reasonable attorney's fees and all costs of suit and interest thereon;

3. An award of damages as allowed under 42 U.S.C. §1983; 42

32

U.S.C. §1986; and 42 U.S.C. §1988;

4.   Any other award and equitable relief allowed under statute or pursuant to the law or equitable and just power of this Court to which Plaintiff is entitled; and

5.   Any prospective injunctive relief that the Court deems just and appropriate under the circumstances.

### JURY DEMAND

Plaintiff hereby demands trial by jury of all issues in this action.

### DESIGNATION OF TRIAL COUNSEL

Plaintiff designates Thomas J. Mallon, Esq., as trial counsel in this matter.

<u>s/ Thomas J. Mallon</u>
THOMAS J. MALLON

Dated: November 14, 2018