**LAW OFFICES OF MALLON & TRANGER**
86 Court Street
Freehold, NJ 07728
Telephone: (732) 780-0230
Facsimile: (732) 780-5002
Attorneys for Plaintiffs, John P. Saddy,
Karma Entertainment, LLC, and Saddy Family, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

----------------------------------------

| | |
|---|---|
| **JOHN P. SADDY, KARMA ENTERTAINMENT, LLC,** : | Civil No. 18-16137 |
| **and SADDY FAMILY, LLC,** : | (FLW/LHG) |
| : | |
| Plaintiffs, : | |
| : | Civil Action |
| v. : | |
| : | |
| **BOROUGH OF SEASIDE HEIGHTS;** : | |
| **CHRISTOPHER VAZ,** Seaside Heights Borough : | |
| Administrator; **ANTHONY E. VAZ,** : | **FIRST AMENDED** |
| Seaside Heights Mayor; **RICHARD TOMPKINS;** : | **COMPLAINT AND** |
| **MICHAEL CARBONE; LOUIS DiGULIO;** : | **JURY DEMAND** |
| **AGNES POLHEMUS; HARRY SMITH;** : | |
| **VICTORIA GRAICHEN,** Seaside Heights : | |
| Council members; **KENNETH ROBERTS,** : | |
| Zoning Officer; : | |
| **CHARLES LASKEY,** Building Inspector; : | |
| **THOMAS BOYD,** Chief of Police; : | |
| **SERGEANT LUIGI VIOLANTE,** a Seaside : | |
| Heights police officer; **JOHN DOES 1-10,** : | |
| Seaside Heights police officers; and : | |
| **JOHN DOES 11-20,** Seaside Heights : | |
| Council Members; Municipal Employees; : | |
| Officials; and/or Appointees, : | |
| : | |
| Defendants. : | |

----------------------------------------

Plaintiffs, John P. Saddy, Karma Entertainment, LLC, and

Saddy Family, LLC, by way of Amended Complaint against the

Defendants, say:

1

**JURISDICTION**

1.  This action is brought pursuant to 42 U.S.C. §1983, 42
    U.S.C. §1985(3), 42 U.S.C. §1986, and in accordance with the
    First, Fourth, Fifth, and Fourteenth Amendments to the
    United States Constitution.  Jurisdiction is conferred under
    28 U.S.C. §§ 1331 and 1343(3).

**PARTIES**

2.  Plaintiff, John P. Saddy, is a resident of the Township of
    Toms River in the State of New Jersey.  At all times
    relevant to the allegations of this Complaint, Plaintiff
    possessed a 50% interest in Plaintiff, Karma Entertainment,
    LLC, d/b/a/ Club Karma.  Plaintiff, John P. Saddy, also
    owned the majority interest in Plaintiff, Saddy Family, LLC,
    which received all the profits earned by Club Karma.
    Consequently, Plaintiff, John P. Saddy, is the real party in
    interest in this lawsuit.  The other shareholders in both
    entities have declined to participate in this matter.

3.  Plaintiff, Karma Entertainment, LLC, d/b/a Club Karma is a
    nightclub located in the Borough of Seaside Heights that
    Plaintiff, John P. Saddy, maintained a 50% interest.  At all
    times relevant to the allegations of this Complaint,
    Plaintiff, John P. Saddy, served as the manager and was the
    public face of Club Karma.

4.  Plaintiff, Saddy Family, LLC, is a duly organized limited

2

liability company that offers real estate management services.  After Club Karma paid its operating expenses, its profits were paid to Plaintiff, Saddy Family, LLC.

5.   At all times relevant to the allegations of this Complaint, Defendants, Luigi Violante and/or John Does 1-10, were Seaside Heights police officers who acted under color of state law.  They are sued in their official and individual capacities.

6.   At all times relevant to the allegations of this Complaint, Defendant, Anthony E. Vaz, served as Mayor of the Borough of Seaside Heights and was a policymaker who acted under color of state law.  He is sued in his official and individual capacities.

7.   At all times relevant to the allegations of this Complaint, Defendant, Thomas Boyd, served as Chief of Police for the Borough of Seaside Heights and was a policymaker who acted under color of state law.  He is sued in his official and individual capacities.

8.   At all times relevant to the allegations of this Complaint, Defendant, Christopher Vaz, served as Borough Administrator for Seaside Heights and was a policymaker who acted under color of state law.  He is sued in his official and individual capacities.

9.   At all times relevant to the allegations of this Complaint,

Defendants, Richard Tompkins; Louis DiGulio; Agnes Polhemus; Harry Smith; Victoria Graichen; Council President Mike Carbone; and/or John Does 11-20 served as Seaside Heights Borough Council Members and were policymakers acting under color of state law.  They are sued in their official and individual capacities.

10.  At all times relevant to the allegations of this Complaint, Defendant, Kenneth Roberts, served as the Zoning Officer for the Borough of Seaside Heights and was a municipal employee, official and/or appointee acting under color of state law. He is sued in his official and individual capacities.

11.  At all times relevant to the allegations of this Complaint, Defendant, Charles Lasky served as the Building Inspector for the Borough of Seaside Heights and was a municipal employee, official and/or appointee acting under color of state law.  He is sued in his official and individual capacities.

12.  Defendant, Borough of Seaside Heights, is a duly designated municipality organized within and under the laws of the State of New Jersey.  At all times relevant to the allegations of this Complaint, Defendant, Borough of Seaside Heights, was the employer and/or responsible for the supervision and conduct of Defendants, Anthony E. Vaz; Christopher Vaz; Richard Tompkins; Louis DiGulio; Agnes

4

Polhemus; Harry Smith; Victoria Graichen; Michael Carbone;
Kenneth Roberts; Charles Lasky; Thomas Boyd; Luigi Violante;
John Does 1-10; and/or John Does 11-20.

**FACTUAL ALLEGATIONS**

**A.    INTRODUCTION**

13. Defendant, Borough of Seaside Heights, through its elected
    governing body; employees; officials; and/or appointees, and
    its Police Department, has a history of abusing power and
    taking retaliatory actions against residents and/or citizens
    for exercising their constitutional rights.

14. Through its Council Members; Municipal Employees; Officials;
    Appointees; and its Police Officers, including the
    individually named Defendants, Defendant, Borough of Seaside
    Heights, has implemented and maintains an unconstitutional,
    discriminatory and racist policy, practice and/or custom of
    discouraging and limiting African-American and LGBTQ
    visitors to Seaside Heights.

15. Club Karma was shut down by Defendants in May 2018 in
    retaliation for night club manager and part-owner Plaintiff,
    John P. Saddy's refusal to abide by the Borough of Seaside
    Heights' unconstitutional, discriminatory and racist policy,
    practice and/or custom.

16. Further, the retaliation was intended to punish Plaintiff,
    John P. Saddy, based on the fallacy that Saddy - not Seaside

Heights police officers - was responsible for numerous excessive force lawsuits filed against the Borough and the resulting settlement pay-outs and increase in liability insurance premiums, all because some of the incidents occurred outside of Saddy's businesses.

17. Saddy has operated bars and nightclubs in Seaside Heights for over 25 years.  He established Club Karma in or around 1998.

18. In or around the year 2000, Saddy opened Club Karma after extensive discussions with representatives of Defendant, Borough of Seaside Heights.

19. Pursuant to Saddy's agreement with the Borough, he added a restaurant, Luna Rosa, to the Club Karma property.

20. Over the years, Saddy operated his property as both a nightclub (Club Karma) and a restaurant (Luna Rosa - later, Savor Lounge and Chillz) in accordance with his agreement with the Borough.

21. Club Karma never served underage patrons; did not condone or encourage drug use; and refused entry and service to intoxicated people.

22. Saddy never had any trouble with the Borough of Seaside Heights over the years and continued operating his business until Defendants orchestrated the closing of Club Karma during Memorial Day Weekend 2018 after Saddy objected to

6

Seaside Heights' policy, practice and/or custom of
discouraging and limiting the number of African American and
LGBTQ patrons at Club Karma.

**B.    DEFENDANTS' HISTORY AND PATTERN OF POWER ABUSE
       BY POLICE AND BOROUGH OFFICIALS**

23.  Beginning in the 1990s, Saddy witnessed, and became the
target of, Defendants' abuse of power.  This pattern of
abuse of power and police misconduct has continued unabated
since that time.

24.  In the early 1990s, Saddy ejected from the Bamboo Bar an
intoxicated Seaside Heights police dispatcher who was
groping women.  Within five minutes, Saddy received a phone
call from a Seaside Heights police lieutenant, who told
Saddy, in no uncertain terms, that not only was Saddy going
to let the dispatcher return, but he was going to apologize
and allow him and his friends to drink for free.  Saddy
refused.

25.  Within thirty minutes of Saddy's refusal, approximately
fifteen officers, accompanied by a Seaside Heights sergeant,
entered the premises, demanded identification and harassed
many of Saddy's customers.

26.  Over the next three days, Saddy was subjected to numerous
and baseless motor vehicle traffic stops while arriving and
leaving Seaside Heights.

27.  Saddy met with the aforementioned police lieutenant and the

Mayor of Seaside Heights regarding this harassment and retaliation.  In return for an end to the police harassment, Saddy was forced to agree to "sponsor" police softball teams - comprised of off-duty police officers.  With this "sponsorship," these off-duty police officers were allowed to eat and drink for free at Saddy's establishments after softball games.  Saddy was also required to purchase the team's uniforms.  This continued until the late 1990s.

28.  Despite Saddy's "sponsorship," Seaside Heights police officers regularly conducted unjustified searches of patrons waiting to enter Saddy's nightclubs.

29.  In 1992, Saddy was directed to support incumbent political candidates under threat from the Borough Council that it would institute a selective 12:00 a.m. closing time for the Bamboo Bar - a death sentence for any nightclub.

30.  Approximately six months later, a new election was held after it was discovered that deceased and fictitious persons had voted for the incumbent slate.  As a result, one incumbent politician was indicted and admitted into the Pretrial Intervention Program.

31.  In the early 2000s, Defendant, Borough of Seaside Heights, passed an ordinance that required Saddy to maintain a police presence outside his nightclubs, which was comprised of off-duty Seaside Heights police officers.  Saddy was forced to

reimburse the Borough for use of these off-duty police officers at a rate of pay significantly higher than that which Seaside Heights ordinarily paid its police officers.

32. As a result of Saddy complying with this ordinance, he became embroiled as a named Defendant in lawsuits along with Seaside Heights and its police officers, who were sued several times for using excessive force.

33. Saddy became involved in these lawsuits because Seaside Heights police officers would beat and arrest people being escorted from Saddy's nightclubs by Saddy's security staff.

34. In fact, the vast majority of these excessive force lawsuits filed against the Borough of Seaside Heights and its police officers did not occur on Saddy's properties, but rather outside other establishments or other locations such as the boardwalk.

35. Ultimately, Defendant, Borough of Seaside Heights, eliminated the ordinance requiring its officers provide a police presence outside Saddy's nightclubs.  The Borough took this action to reduce the number of lawsuits filed against its officers.

36. Despite the fact that: (1) Saddy had complied with the ordinance and paid the Borough for the police presence; and (2) the majority of the lawsuits filed against the Borough and its police officers occurred nowhere near Saddy's

establishments, Seaside Heights blamed Saddy for the
lawsuits against its police officers.  Defendant, Borough
Administrator Christopher Vaz, told Saddy that his
nightclubs were responsible for the majority of the lawsuits
and that the lawsuits caused Seaside Heights to pay higher
liability insurance premiums.

37. Defendant, Borough Administrator Christopher Vaz, also told
Saddy that his nightclubs were responsible for destroying
the family-town image of Seaside Heights.

## C.   DEFENDANTS' RACIST AND DISCRIMINATORY POLICIES, PRACTICES AND/OR CUSTOMS

38. Defendant, Borough of Seaside Heights, has pressured Saddy
to limit and discourage the number of African-Americans
coming to his nightclubs.

39. Former Mayor William Akers complained to Saddy in private
discussions that there were too many African-American
tourists on the boardwalk and nightclub patrons in Seaside
Heights.

40. Representatives of Defendant, Borough of Seaside Heights,
made clear to Saddy over his objection that he was to limit
the number of his African-American patrons by
refraining from playing Hip-Hop and Rap music, which was
thought to attract African-Americans to nightclubs.
Defendants also forbade Saddy from holding events geared
toward the LGBTQ community.

10

41.  Defendant, Chief of Police Thomas Boyd, has made it known
     that Saddy's clubs have "too many 'n*****s'" and warned him
     not to cater to African-Americans by playing Hip-Hop and Rap
     music.  Boyd made it clear that he was speaking on behalf of
     the Borough of Seaside Heights, specifically stating "The
     Council's yelling at me, so I'm yelling at you."

42.  Hip-Hop and Rap music are popular among all of Saddy's
     patrons, not only African-Americans.  Saddy advised Boyd
     numerous times that club patrons have told him that they
     wanted to hear these types of music, to which Boyd
     responded, "I don't want Hip-Hop. I don't care what [music]
     chart it's on."  Boyd also ordered Saddy to institute a
     dress code in his clubs and a policy requiring customers
     provide two forms of identification for entry, a policy
     designed to limit and discourage African-American patrons.
     Boyd also required Saddy to post signs reading "no do rags"
     and "dress code" at his businesses.

43.  Defendant, Borough of Seaside Heights, also forbade certain
     types of events.  By way of example, Saddy was forbidden to
     hold an event sponsored by Hennessy-Cognac because Boyd
     claimed that a Hennessy event would attract too many
     African-Americans to Seaside Heights.

44.  In fact, Saddy was told that if he moved forward with the
     Hennessy-Cognac event, the Seaside Heights Police Department

would conduct a raid.

45. To ensure that Saddy was limiting and discouraging African-American patrons, high-ranking Borough officials, including but not limited to Defendant, Chief of Police Thomas Boyd, were sent to Saddy's nightclubs specifically to count the number of African-Americans and report back to the Mayor and Council.

46. Defendants' racist and discriminatory policy, practice and/or custom also included limiting and discouraging LGBTQ individuals from entering Saddy's nightclubs and Seaside Heights.  Defendants were engaging in a very subtle form of discrimination - outwardly, there was no apparent discrimination taking place while in fact Saddy was experiencing constant pressure from Borough Officials to reduce the number of African-American and LGBTQ patrons that would be attracted to his nightclubs.

47. Following Hurricane Sandy, Saddy attended a Seaside Heights Borough Council meeting.

48. Saddy spoke with Defendant, Borough Administrator Christopher Vaz, following this meeting to discuss the idea of having Hip-Hop/Rap and LGBTQ-themed events to increase business and revenue, which had been crippled by Hurricane Sandy.

49. Defendant Vaz replied that if Saddy held any such events,

12

Club Karma and the Bamboo Bar's closing time would be changed to 12:00 a.m. and "the police would be living" at Saddy's establishments.

**D.   DEFENDANTS' RETALIATION**

50.   In April 2018, Saddy and an African-American Promoter/DJ/Rapper met with Borough Administrator Christopher Vaz to revisit the issue of having Hip-Hop/Rap and LGBTQ-themed events at Club Karma and The Bamboo.

51.   Promoters had previously been unsuccessful in introducing Hip-Hop and Rap entertainment events in Seaside Heights because of the Borough's policy, practice and/or custom of limiting and discouraging African-American tourists and nightclub patrons.

52.   Saddy told Defendant, Borough Administrator Christopher Vaz, that it was wrong for Seaside Heights to dictate the types of music he could play in his nightclubs; that he would no longer comply with its prohibition on playing Hip-Hop and Rap music; that he intended to schedule Hip-Hop and Rap music events at Club Karma; and that he objected to the Borough's attempts to control the racial/ethnic makeup of his nightclub patrons.

53.   At that same meeting, Saddy suggested the need to increase tourism in Seaside Heights and offered to bring in promoters from Asbury Park to host events for the LGBTQ community, in

13

addition to Hip-Hop and Rap music events.

54. Defendant, Borough Administrator Christopher Vaz, was angry that Saddy had brought the African-American Promoter to the meeting.  At one point, Vaz spoke privately with Saddy and stated, "Don't ever set me up again."  Saddy understood this to mean that Vaz did not want to interact with African-Americans and did not want Saddy playing music at his nightclubs that would supposedly attract African-Americans.

55. Vaz also told Saddy that "Blacks and Fags" did not conjure images of a family-oriented town.

56. Several weeks later, in early May 2018, Defendant, Zoning Officer Kenneth Roberts, told Saddy, without elaboration, that the Borough was "upset" with him.

57. For the following two weeks, Saddy made a number of calls to Defendants, Mayor Anthony Vaz and Borough Administrator Christopher Vaz, and left messages to find out why the Borough was "upset" with him.  Saddy never received a response from them.

58. Unbeknownst to Saddy, the Borough of Seaside Heights filed a Verified Complaint and Order to Show Cause seeking a permanent injunction closing Club Karma on May 22, 2018, which was denied by the Court.

59. Club Karma and Chillz opened for the summer season Memorial Day weekend, Friday May 25, 2018.

14

60. During the week prior to the opening, Defendant, Zoning Officer Kenneth Roberts, inspected Club Karma and Chillz multiple times. No code violations were found.

61. However, on May 25, 2018, Kenneth Roberts returned with Defendant, Building Inspector Charles Lasky. With Roberts' encouragement, Lasky issued summonses for "change of use" and "erecting a temporary stage." Lasky told Saddy that Borough Administrator Christopher Vaz had ordered him to issue the summonses.

62. Following Lasky's termination, Kenneth Roberts contacted Saddy, at which time he advised Saddy to "rip up" the summonses. According to Roberts, the Borough was dismissing the charges because no such charges existed among Borough ordinances.

63. On May 26, 2018 at approximately 9:00 p.m., nine State Fire Inspectors arrived at Club Karma and Chillz. Saddy was told that the Borough requested that the State inspect his property.

64. No violations were found following a ninety minute inspection.

65. The following night, Sunday, May 27, 2018, Club Karma and Chillz were surrounded by Seaside Heights police officers; Ocean County Sheriff's officers; K-9 units; Borough officials; EMS crews; and the Fire Department.

15

66.  Saddy asked Chief Boyd what was occurring.  In response, he
     stated: "I'm just doing my job, John."

67.  Club Karma was hosting an electronic music event called
     "Hyperglow," which in prior years had been run by the
     Borough on the beach.  That night, Chillz was strictly open
     to individuals 21 years of age and older.  Anyone less than
     21 years of age was confined to Club Karma.  The two
     establishments were partitioned by large sliding glass doors
     measuring approximately thirty feet wide.  No alcohol was
     served in the under-21 section of Club Karma.

68.  Over Saddy's objection, plain clothes police officers,
     including Defendants, Sergeant Luigi Violante and John Does
     1-10, entered and opened the glass doors separating Chillz
     and Club Karma.  This intentional act on the part of law
     enforcement allowed minors to enter Chillz.

69.  By removing the barrier separating Chillz and Club Karma,
     adult and minor patrons intermixed, thus providing a
     justification for police officers to claim they were
     arresting minors for underage drinking.

70.  Defendants, Sergeant Luigi Violante and John Does 1-10,
     searched Saddy's patrons and premises without a warrant or
     probable cause.

71.  Defendants contend that there were a number of EMS calls for
     intoxicated, overdosed and injured Club Karma patrons.

72. Saddy was present that evening and did not witness any overdoses on his property or injury to any person.  None were reported to him by any member of his staff.

73. Defendant, Borough of Seaside Heights, ordered Club Karma closed and it remains closed to this day.  Chillz continued to operate for the season.

74. The police raid was staged to create a justification for closing Club Karma because of Saddy's refusal to follow Defendants' policy, custom and/or practice of limiting and discouraging African-American and LGBTQ visitors to his nightclubs and Seaside Heights.

75. As further retaliation for Saddy's refusal to abide by the Borough's racist and homophobic policy, practice and/or custom, Defendant, Borough Administrator Christopher Vaz, went on TV 12 News shortly after Club Karma's closing to falsely announce that there were overdoses at the club and that somebody was thrown off a balcony to the sidewalk. Defendant Vaz also told parents to keep their children away from Club Karma.

76. On June 20, 2018, Defendant, Borough of Seaside Heights, filed a complaint with the New Jersey Department of Law and Public Safety seeking to revoke Club Karma's mercantile license and suspend Saddy's liquor license for a year.

77. The retaliation continues.  Routinely, Club Karma has

17

operated "18 to party, 21 to drink" events, meaning that eighteen, nineteen and twenty year olds were permitted in Club Karma to dance and socialize.  Saddy also operated "Teen Night," where teenagers between fourteen and seventeen years of age were permitted on the premises to dance and socialize.

78.  In July 2018, Defendant, Borough of Seaside Heights, adopted an ordinance banning the "18 to party, 21 to drink" and "Teen Night" events.  Saddy had successfully run these types of events for over twenty-five years at The Bamboo Bar and Club Karma without any problems or complaints from the Borough.

79.  Defendant, Mayor Anthony Vaz, stated in a June 11, 2018, Asbury Park Press article that the ordinance banning the events was directed solely toward  Saddy's establishments. Following adoption of the ordinance, other licensed establishments were permitted by Defendant, Borough of Seaside Heights, to continue operating "18 to party, 21 to drink" and "Teen Night" events in bars on the boardwalk without any repercussions.

80.  Contrary to the Borough of Seaside Heights' public claims that it is trying to promote a "Family Environment," the Borough, through the individually named defendants, is actually trying to promote a "White" and "Straight"

Environment, as evidenced by its maintenance and implementation of a policy, practice and/or custom of limiting and discouraging the number of African-American and LGBTQ nightclub patrons and visitors to Seaside Heights.

81. After years of acquiescing to Defendants' racist and homophobic policy, practice and/or custom, Plaintiff, John P. Saddy, announced his intention to play music and hold events which would attract African-American and LGBTQ nightclub patrons and visitors to Seaside Heights.  However, Defendants' actions caused Club Karma to lose its entire 2018 Summer season revenue, resulting in the loss of income to Plaintiffs.  Plaintiffs, John P. Saddy. Karma Entertainment, LLC, and Saddy Family, LLC, continue to lose revenue based on these actions.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. §1983
### MONELL LIABILITY
### BOROUGH OF SEASIDE HEIGHTS

82. Plaintiffs repeat the allegations of the previous paragraphs as if set forth at length herein.

83. Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; John Does 11-20, Seaside

19

Heights Council Members; Municipal Employees; Officials and/or Appointees; and Chief of Police Thomas Boyd, are responsible for making policy for the Borough of Seaside Heights.

84. The policy making authority of Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials and/or Appointees; and Chief of Police Thomas Boyd, is final and unreviewable.

85. Defendants' actions, as outlined above, constitute a policy or custom that violates the prohibition of discrimination based on race and sexual orientation under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

86. As a direct and proximate cause, Plaintiffs have been deprived of their constitutional rights under the First, Fourth, and Fifth Amendments to the United States Constitution; have sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

COUNT II
42 U.S.C. §1983
SUPERVISORY LIABILITY
BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;
MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;
COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO
COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;
COUNCIL MEMBER VICTORIA GRAICHEN; JOHN DOES 11-20,
Seaside Heights Council Members; Municipal Employees;
Officials and/or Appointees; and CHIEF OF POLICE THOMAS BOYD

87. Plaintiffs repeat the allegations of the previous paragraphs as if set forth at length herein.

88. Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials and/or Appointees; and Chief of Police Thomas Boyd, are responsible for making policy for the Borough of Seaside Heights.

89. Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials and/or Appointees; and Chief of Police Thomas Boyd,

established and maintained a policy, practice or custom of discrimination based on race and sexual orientation.

90. Alternatively, Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials and/or Appointees, and Chief of Police Thomas Boyd either participated in violating Plaintiffs' rights, directed others, such as Defendants, Zoning Officer Kenneth Roberts; Building Inspector Charles Laskey; Sergeant Luigi Violante; and/or John Does 1-10, Seaside Heights police officers, to violate them, or as persons in charge, had knowledge of or acquiesced in these subordinates' violations.

91. This policy, practice or custom of discrimination based on race and sexual orientation directly caused constitutional harm to Plaintiffs under the First, Fourth, and Fifth Amendments to the United States Constitution.

92. As a direct and proximate cause, Plaintiffs have been deprived of their constitutional rights; have sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

**COUNT III**
**42 U.S.C. §1983**
**FIRST AMENDMENT - RETALIATION**
**BOROUGH OF SEASIDE HEIGHTS;**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN;**
**ZONING OFFICER KENNETH ROBERTS;**
**BUILDING INSPECTOR CHARLES LASKEY;**
**CHIEF OF POLICE THOMAS BOYD; SERGEANT LUIGI VIOLANTE;**
**JOHN DOES 1-10, Seaside Heights Police Officers;**
**AND/OR JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials; and/or Appointees**

93. Plaintiffs repeat the allegations of the previous paragraphs as if set forth at length herein.

94. By Plaintiff, John P. Saddy, vocally objecting to Seaside Heights' prohibition on his playing Hip-Hop and Rap music in his nightclubs and its attempt to reduce the number of African-Americans and LGBTQ individuals that would be attracted to his nightclubs and Seaside Heights, Plaintiffs engaged in constitutionally protected conduct.

95. As a result of Plaintiffs engaging in this constitutionally protected conduct, Defendants abused their authority by harassing and retaliating against Plaintiffs.  This adverse action included: (1) issuing baseless code enforcement and building summonses to Club Karma so as to interfere with its operation; (2) executing an unjustified police raid which resulted in the closing of Club Karma; (3) filing a

23

Complaint and Order to Show Cause to prevent Club Karma from operating; (4) filing a Complaint seeking to suspend and/or revoke Club Karma's mercantile and liquor licenses; and (5) passing an Ordinance banning "18 to Party, 21 to Drink" and "Teen Night" events directed solely at Plaintiff, John P. Saddy's establishments while permitting other establishments to continue operating such events without such interference.

96. The exercise of Plaintiffs' constitutional right was a substantial and motivating factor in the adverse action taken by Defendants against Plaintiffs.

97. As a direct and proximate cause, Plaintiffs have been deprived of their constitutional rights; have sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

**COUNT IV**
**42 U.S.C. §1983**
**FOURTH AMENDMENT – ILLEGAL SEARCH**
**SERGEANT LUIGI VIOLANTE AND JOHN DIES 1-10,**
**Seaside Heights Police Officers**

98. Plaintiffs repeat the allegations of the previous paragraphs as if set forth at length herein.

99. The Fourth Amendment prohibits law enforcement from engaging in unreasonable searches and seizures.

100. The raid and search of Club Karma by Defendants, Luigi Violante and John Does 1-10, Seaside Heights police officers, as outlined above, was unjustified, without

24

probable cause, reasonable suspicion or any other exception to the Fourth Amendment's warrant requirement.

101. As a direct and proximate cause, Plaintiffs have been deprived of their constitutional rights; have sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

**COUNT V**
**42 U.S.C. §1983**
**FIFTH AMENDMENT - REGULATORY TAKING**
**BOROUGH OF SEASIDE HEIGHTS;**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN; CHIEF OF POLICE THOMAS BOYD**
**AND/OR JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials and/or Appointees**

102. Plaintiffs repeat the allegations of the previous paragraphs as if set forth at length herein.

103. By Plaintiff, John P. Saddy, vocally objecting to Seaside Heights' prohibition on his playing Hip-Hop and Rap music in his nightclubs and its attempt to reduce the number of African-Americans and LGBTQ individuals that would be attracted to his nightclubs and Seaside Heights, Plaintiffs engaged in constitutionally protected conduct.

104. As a result of Plaintiffs engaging in this constitutionally protected conduct, Defendants abused their authority, harassed and retaliated against Plaintiffs by, *inter alia*,

executing an unjustified police raid which resulted in the closing of Club Karma.

105. The closing of Club Karma by Defendants, as outlined above, have denied Plaintiffs all economically beneficial or productive use of the establishment, and constitutes a Regulatory Taking in violation of the Fifth Amendment.

106. As a direct and proximate cause, Plaintiffs have been deprived of their constitutional rights; have sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

**COUNT VI**
**42 U.S.C. §1983**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN;**
**ZONING OFFICER KENNETH ROBERTS**
**BUILDING INSPECTOR CHARLES LASKEY;**
**CHIEF OF POLICE THOMAS BOYD; SERGEANT LUIGI VIOLANTE;**
**JOHN DOES 1-10, Seaside Heights Police Officers;**
**AND/OR JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials; and/or Appointees**

107. Plaintiffs repeat the allegations of the previous paragraphs as if set forth at length herein.

108. Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith;

Council Member Victoria Graichen; Zoning Officer Kenneth
Roberts; Building Inspector Charles Laskey; Chief of Police
Thomas Boyd; Sergeant Luigi Violante; John Does 1-10,
Seaside Heights police officers; and/or John Does 11-20,
Seaside Heights Council Members; Municipal Employees;
Officials; and/or Appointees, acting in concert, agreed
and/or conspired to retaliate against Plaintiffs for
Plaintiff, John P. Saddy's vocal objection to the Borough's
prohibition on his playing Hip-Hop and Rap music in his
nightclubs and its attempt to reduce the number of African-
Americans and LGBTQ individuals that would be attracted to
his nightclubs and Seaside Heights - conduct that is
constitutionally protected.  This was a very subtle form of
discrimination, but discrimination nonetheless.

109. In furtherance of this conspiracy, Defendants attempted to
cover up and/or justify their violation of Plaintiffs' First
Amendment right by (1) issuing baseless code enforcement and
building summonses to Club Karma so as to interfere with its
operation; (2) executing an unjustified police raid which
resulted in the closing of Club Karma; (3) filing a
Complaint and Order to Show Cause to prevent Club Karma from
operating; (4) filing a Complaint seeking to suspend and/or
revoke Club Karma's mercantile and liquor licenses; and (5)
passing an Ordinance banning "18 to Party, 21 to Drink" and

"Teen Night" events directed solely at Plaintiff's establishments while permitting other establishments to continue operating such events without such interference.

110. Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; Zoning Officer Kenneth Roberts; Building Inspector Charles Laskey; Chief of Police Thomas Boyd; Sergeant Luigi Violante; John Does 1-10, Seaside Heights police officers; and/or John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials; and/or Appointees, acting in concert, agreed and/or conspired to engage in an unconstitutional Regulatory Taking of Plaintiffs' property.

111. In furtherance of this conspiracy, Defendants attempted to cover up and/or justify their violation of Plaintiffs' Fifth Amendment right by falsely claiming that there were a number of intoxicated, overdosed and injured Club Karma patrons on the night of May 27, 2018.

112. As a direct and proximate cause, Plaintiffs have been deprived of their constitutional rights; have sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

28

**COUNT VII**
**42 U.S.C. §1985(3)**
**CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN;**
**ZONING OFFICER KENNETH ROBERTS;**
**BUILDING INSPECTOR CHARLES LASKEY;**
**CHIEF OF POLICE THOMAS BOYD; SERGEANT LUIGI VIOLANTE;**
**JOHN DOES 1-10, Seaside Heights Police Officers;**
**AND/OR JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials; and/or Appointees**

113. Plaintiffs repeat the allegations of the previous paragraphs as if set forth at length herein.

114. The actions of Defendants, Borough Administrator Christopher Vaz; Mayor Anthony E. Vaz; Council Member Richard Tompkins; Council Member Michael Carbone; Council Member Louis DiGulio; Council Member Agnes Polhemus; Council Member Harry Smith; Council Member Victoria Graichen; Zoning Officer Kenneth Roberts; Building Inspector Charles Laskey; Chief of Police Thomas Boyd; Sergeant Luigi Violante; John Does 1-10, Seaside Heights police officers; and/or John Does 11-20, Seaside Heights Council Members; Municipal Employees; Officials; and/or Appointees, demonstrate a conspiracy to deprive African-Americans and LGBTQ individuals of either equal protection of the laws or of equal privileges and immunities under the law.

115. In furtherance of this conspiracy, Defendants established a

29

subtle policy or custom of discrimination by attempting to reduce the number of African-Americans and LGBTQ individuals that would be attracted to Plaintiff, John P. Saddy's nightclubs and the Borough of Seaside Heights - in violation of the prohibition of discrimination based on race and sexual orientation under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

116. As a result of this policy or custom, and Plaintiff, John P. Saddy's vocal objection to same, Plaintiffs were injured in their person or property or deprived of their right or privilege as a citizen of the United States, which included: (1) issuing baseless code enforcement and building summonses to Club Karma so as to interfere with its operation; (2) executing an unjustified police raid which resulted in the closing of Club Karma; (3) filing a Complaint and Order to Show Cause to prevent Club Karma from operating; (4) filing a Complaint seeking to suspend and/or revoke Club Karma's mercantile and liquor licenses; and (5) passing an Ordinance banning "18 to Party, 21 to Drink" and "Teen Night" events directed solely at Saddy's establishments while permitting other establishments to continue operating such events without such interference.

117. As a direct and proximate cause, Plaintiffs have been deprived of their constitutional rights; have sustained lost

income, emotional distress and pain and suffering; and will
continue to incur same for some time to come.

**COUNT VIII**
**42 U.S.C. §1986**
**ACTION FOR NEGLECT TO PREVENT**
**BOROUGH ADMINISTRATOR CHRISTOPHER VAZ;**
**MAYOR ANTHONY E. VAZ; COUNCIL MEMBER RICHARD TOMPKINS;**
**COUNCIL MEMBER MICHAEL CARBONE; COUNCIL MEMBER LOUIS DiGULIO**
**COUNCIL MEMBER AGNES POLHEMUS; COUNCIL MEMBER HARRY SMITH;**
**COUNCIL MEMBER VICTORIA GRAICHEN;**
**ZONING OFFICER KENNETH ROBERTS;**
**BUILDING INSPECTOR CHARLES LASKEY;**
**CHIEF OF POLICE THOMAS BOYD; SERGEANT LUIGI VIOLANTE;**
**JOHN DOES 1-10, Seaside Heights Police Officers;**
**AND/OR JOHN DOES 11-20,**
**Seaside Heights Council Members; Municipal Employees;**
**Officials; and/or Appointees**

118. Plaintiffs repeat the allegations of the previous paragraphs
as if set forth at length herein.

119. Defendants, having conspired to interfere with Plaintiffs'
civil rights under 42 U.S.C. §1985(3), and with knowledge
that violations against the prohibition of discrimination
based on race and sexual orientation were occurring, had the
power to prevent or aid in preventing the commission of such
action.

120. By neglecting or refusing to prevent discrimination based on
race and sexual orientation, as described above, Plaintiffs
have been deprived of their civil rights; have sustained
lost income, emotional distress and pain and suffering; and
will continue to incur same for some time to come.

**COUNT IX**
**NEW JERSEY STATE CONSTITUTION AND**
**NEW JERSEY CIVIL RIGHTS ACT ("NJCRA")**

121. Plaintiffs repeat the allegations of the previous paragraphs as if set forth at length herein.

122. This Court has supplemental jurisdiction to hear and adjudicate state law claims.

123. Defendants' actions, as outlined above, have violated Plaintiffs' civil rights under the New Jersey State Constitution and New Jersey Civil Rights Act, <u>N.J.S.A.</u> 10:6-1 *et seq.*

124. As a direct and proximate cause, Plaintiffs have been deprived of their constitutional rights; have sustained lost income, emotional distress and pain and suffering; and will continue to incur same for some time to come.

<u>**RELIEF**</u>

**WHEREFORE,** Plaintiffs seek relief and judgment against the Defendants, including but not limited to:

1. An award of compensatory damages and punitive damages based on the intentional and malicious acts of the Defendants, which are allowed by the statutes pleaded herein or as permitted by common law and rules;

2. An award of reasonable attorney's fees and all costs of suit and interest thereon;

3. An award of damages as allowed under 42 U.S.C. §1983; 42

U.S.C. §1986; and 42 U.S.C. §1988;

4.    Any other award and equitable relief allowed under statute or pursuant to the law or equitable and just power of this Court to which Plaintiffs are entitled; and

5.    Any prospective injunctive relief that the Court deems just and appropriate under the circumstances.

<u>**JURY DEMAND**</u>

Plaintiffs hereby demand trial by jury of all issues in this action.

<u>**DESIGNATION OF TRIAL COUNSEL**</u>

Plaintiffs designate Thomas J. Mallon, Esq., as trial counsel in this matter.

<u>s/ Thomas J. Mallon</u>
THOMAS J. MALLON

Dated: March 27, 2019

33